UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**INDIAN NATIONAL FINALS RODEO INC & INDIAN NATIONAL FINALS RODEO ASSOCIATION INC**,

Debtor.

Case No. **11-60113-11**

# MEMORANDUM OF DECISION

At Butte in said District this 20th day of June, 2011.

In this Chapter 11 case the Court held a hearing at Great Falls after due notice on April 15, 2011, on the motion to dismiss the case for bad faith filing under 11 U.S.C. § 1112(b)(4) (Docket No. 24) filed by the Apache Gold Casino Resort (hereinafter "Apache Gold"). The Debtor filed an objection and was represented at the hearing in opposition by attorney Steven M. Johnson of Great Falls. Debtor's general manager Donna Hoyt ("Hoyt") testified. Apache Gold was represented by attorney Gary S. Deschenes ("Deschenes") of Great Falls. Debtor's Exhibits ("Ex.") 6, 7, 8, 9, 10, 11, and 12 were admitted into evidence without objection. At the conclusion of the parties' cases-in-chief the Court denied Apache Gold's motion to dismiss for bad faith filing at the hearing[1].

This Court has exclusive jurisdiction of this case under 28 U.S.C. § 1334(a). Apache Gold's motion to dismiss is a core proceeding under 28 U.S.C. § 157(b)(2). At issue was

---

[1] The written Order denying Apache Gold's motion to dismiss was entered on April 15, 2011 (Dkt. 89). The Court stated that it would enter this separate Memorandum of Decision.

1

whether the Debtor filed this Chapter 11 case in bad faith in violation of § 1112(b)(4). This Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS

INFR was founded in 1976 to promote Native American rodeo. Hoyt has been general manager of INFR for 9 years. Hoyt testified that previously there were five Indian rodeo associations which came together to form INFR. She testified that INFR is a Montana corporation and registered as a nonprofit under § 501(c)(3) of the Internal Revenue Code. INFR has no shareholders. INFR's office is located in office space located at and donated by the Blackfoot Community College in Browning, Montana, pursuant to written leases. INFR uses Quickbooks for its recordkeeping.

Hoyt testified that INFR has seven commissioners in the United States and Canada who are all volunteers, and are paid no salary. INFR has eleven regions in the USA and Canada, each of which has an elected officer. Each region signs a contract with INFR to hold rodeos. Hoyt testified that INFR charges all eleven regions a $3,000 regional fee per year.

Hoyt testified that the regions hold six regional rodeos per year, and INFR runs the national finals rodeo near the end of the year. At the regional rodeos INFR offers prize money in each event in the sum of $200, and the INFR tour rodeo must have at least $2,000 in prize money for each event. Contestants who wish to participate in INFR rodeos must be members who pay INFR different membership fees according to their category. Hoyt testified that Membership fees range from $50 for junior memberships and personnel memberships, to $80 for senior members, and $200 for INFR members. Half of the membership fees go to INFR's office, and the other half is distributed to each region. Members are not paid dividends by INFR.

Contestants are charged $5 per rodeo event entry at the regional rodeos. Qualifiers for the national finals pay $300 per event entry. Hoyt testified that the entry fees are earmarked for prize money to the competitors at the finals rodeo, and cannot be used by INFR for any other purpose.

The goal of members is to qualify for the national finals rodeo. Hoyt testified that each of the eleven regions sends at least two qualifiers to the national finals rodeo. At the finals there are 33 contestants in each of the nine rodeo events, and there are also junior and senior events. Hoyt testified that a total of 500 contestants come to the national finals rodeo to participate.

INFR receives additional funds by entering into written agreements with sponsors. Hoyt testified that sponsorship funds are earmarked for prize money, or to pay expenses for the finals rodeo. Hoyt testified that the funds raised from sponsorships are only for the purposes given for prize or award money, or to pay expenses for the finals rodeo. She emphasized, including under cross examination, that sponsorship funds cannot be used by INFR for other than the earmarked purpose.

Hoyt testified that INFR sells sponsorship packets of several types, including: $5,000 for a banner; $7,500 for barrel covers; $10,000 for a chute logo; $25,000 for contestant jackets; and $30,000 for a purse award. INFR maintains a spreadsheet to keep track of sponsor records. Hoyt testified that $25,000 was given to INFR by the South Dakota region for the purpose of prize money. In return, Hoyt testified, sponsors get name recognition and VIP passes to the national finals rodeo.

Hoyt testified that INFR's national finals rodeo has been held for the past 3 years in Las Vegas. Before that INFR held the rodeo at the Apache Gold Casino Resort, which is located on the San Carlos Reservation in Arizona. When asked why INFR moved to Las Vegas, Hoyt

testified that INFR was losing money at Apache Gold. She testified that Apache Gold did not have enough rooms on site to accommodate attendees, the attendance at the national finals rodeo declined each year.

After INFR moved to Las Vegas, Apache Gold sued INFR in the tribal court of the San Carlos Reservation for breach of contract. The parties entered into a stipulation to resolve the matter in August of 2008. INFR paid the first payment to Apache Gold in the amount of $25,000.00, but failed to make any subsequent payments. The San Carlos Tribal Court entered judgment against INFR based on the unpaid settlement. That judgment in turn was entered in the Eighth Judicial District Court, Clark County Nevada as a foreign judgment in case no. A-10-626221.

Hoyt testified that attendance at the national finals rodeo increased after the move to Las Vegas. She stated that sponsorships amounts also increased since the move, and explained that because Las Vegas has more hotels and accommodations, some tribes now purchase blocks of tickets to distribute to their members.

Hoyt testified that in the year 2010 INFR had a positive cash flow. Under cross examination she admitted that the South Point Casino in Las Vegas, where INFR moved the finals, accepted a sponsorship in lieu of some debt.

Hoyt testified that INFR was preparing for the 2010 national finals rodeo in Las Vegas. INFR had 500 members coming to Las Vegas to compete in the rodeo, which was to begin in November. INFR was holding prize money paid by members' entry fees, which was for the event winners. Hoyt testified that Apache Gold did not have a lien on the purse funds, but she was afraid that Apache Gold would seize the prize money.

INFR filed its Chapter 11 petition on November 5, 2010, in the United States Bankruptcy Court for the District of Nevada in Las Vegas. Hoyt testified she filed the petition in Las Vegas because she was in Las Vegas at the time preparing for the national finals. She testified that INFR filed the petition in order to restructure its debts, to show good faith and to provide a plan for payment to Apache Gold.

The 2010 INFR rodeo took place as scheduled. Ex. 9 states that the total revenue from the rodeo was $584,954.75, including $165,589 from ticket sales and $275,243.75 from 2010 sponsors. Ex. 10 states the 2010 event expenses in the total amount of $582,240.66.

Ex. 11 was prepared by Hoyt, and she described Ex. 11 as the 2010 revenues and expenses for INFR, as distinguished from the revenue and expenses from the 2010 national finals rodeo. Ex. 11 shows expenses in the total amount of $138,150 for 2010, and revenue of $140,215.73, including $85,912 from membership fees. Debtor filed its Schedules and Statement of Financial Affairs on December 2, 2010, and later filed amendments.

Schedule A lists no real property, and Hoyt testified that INFR owns no real estate. The original Schedule B lists personal property with a total value of $3,190 which is all office furniture, computers and computer equipment. At item 2 calling for checking, savings or other accounts Debtor listed $0.00 in Native American Bank – Browning Branch. Hoyt testified that when she signed the Debtor's Schedules she did not notice that item 2 stated $0.00 in the bank account. The only other personal property listed on Schedule B is at item 35 ("Other personal property of any kind not already listed.") where the Debtor described "Rights to Indian National Finals Rodeo" with a value stated as "Unknown." Hoyt testified that the Debtor owns the INFR name, but she was not aware of any market value for the name. She testified that she has not

ever tried to market the INFR name.

After Apache Gold filed its motion to dismiss on December 15, 2010, Debtor filed an amended Schedule B on April 12, 2011. Ex. 6. The Amended Schedule B lists personal property in the total amount of $81,767.66. The differences from the original Schedule B are at the entries for item 1 ("Cash on hand") and item 2 (accounts).

The entry on item 1 on amended Schedule B remains $0.00, but Debtor added the following description:

> A cashier's check in the amount of $170,000 has been drawn on Debtor's account on 11/1/10 and delivered to South Point Casino to hold in trust as prize money to contestants of the November 2010 rodeo event to be held at South Point Casino. Debtor had held those funds in trust prepetition for the 2010 Indian National Finals Rodeo annual event in Las Vegas.

Hoyt agreed with the above-quoted statement in her direct examination.

Ex. 8 is INFR's bank statement for the period of November 2010. Hoyt testified that all sponsorship money was deposited into the account. Ex. 8 shows the $170,000 check drawn on 11/1/10. Hoyt testified that the $170,000 came from the entry fees, and that she carried a cashier's check for the prize money instead of using a wire transfer in 2010 because the cashier's check was cheaper, and because she departed for Las Vegas earlier than usual. She testified that she delivered the $170,000 check to South Point Casino before the petition date, and repeated that it was earmarked as prize money. Under cross examination, Hoyt testified that she told her bankruptcy attorney about the cashier's check in Las Vegas, and that she would have disclosed the existence of the cashier's check at any time, including at the 11 U.S.C. § 341(a) meeting of creditors.

The entry on Item 2 (accounts) of amended Schedule B changed from $0.00 in the

6

checking account at Native American Bank – Browning Branch to $78,577.66. The accompanying description states:

> These funds on deposit in Debtor's Native American Bank account consisted of monies held in trust by the Debtor and not belonging to the Debtor. They were sponsor funds delivered to the Debtor and earmarked for use to pay expenses for conducting the Debtor's Finals Rodeo event in Las Vegas. The funds on deposit consist of trust funds for which checks had been written pre-petition to pay for personnel that were retained to work at the Finals Rodeo event, but these pre-petition checks cleared the bank post-petition. A listing of the specific pre-petition check numbers making up those trust funds that cleared the bank post-petition is shown on the list attached to this Amended Schedule B.

Hoyt testified that certain finals expenses were paid from ticket sales. The attachment to Ex. 6 lists nine checks written in November of 2011[2], for the rodeo commencing on November 6, 2010, in the grand total of $83,520. Hoyt testified that when she left for Las Vegas on November 1, 2010, to prepare for the finals, she had printed the $83,520 worth of checks for her personnel and other expenses for the rodeo, and that $78,000 of the prize money in the bank was from sponsorships which were earmarked for that purpose. Hoyt went through the checks on the attachment to Ex. 6, and testified that they were all written before the petition date, and paid from earmarked money. When asked about check no. 4094 on the last page of Ex. 6, Hoyt testified that that $60,000 was spent for expenses in preparation for the finals rodeo prior to the filing of the Chapter 11 petition, such as cleaning stalls.

On cross examination Deschenes asked Hoyt about the approximately $250,000 in funds not listed on the original Schedule B. Hoyt repeated her testimony that the funds were from sponsorship funds and fees held in trust and earmarked as prize money and to pay the expenses of the finals rodeo.

---

[2]The dates 11/1/11 and 11/3/11 on the attachment clearly are typos.

There are no secured claims listed on Ex. D, and no priority claims listed on Schedule E.

Schedule F originally listed Apache Gold as the only unsecured nonpriority claim, in the total amount of $275,000.  Debtor amended Schedule F on December 30, 2010, and amended it again on April 13, 2011 (Ex. 7) adding seven unsecured claims raising the total to $316,032.60, none of which are disputed.  The added claims include:  David C. Amesbury, Inc. ($2,508.00) described as "pre-petition legal fees"; Dr. Steven Williamson ($3,400) for "Expenses for working Indian National Finals Rodeo"; Eugene J. Creighton ($7,000.00) described as "Loan"; Jessie Jaymes Silversmiths ($475.00) for "Go Round Tie Buckle"; Native Solutions Consulting ($776.60) for "Consulting Service"; Tribal Print Source ($2,348.00) for "Printing of Rodeo Programs"; and Willie Johns ($25,000) for "2007 and 2010 World Champion Saddles."

The bank statement, Ex. 8 includes a $10,000 wire transfer from Willie Johns dated 11/3/10.  Hoyt testified that was a loan transfer, and that Willie Johns is a commissioner.  Under cross examination about the other creditors, Hoyt testified that Dr. Williamson was not a sponsor.  Eugene Creighton has a relationship with INFR as a coordinator, but is not on the board.

Debtor amended its SOFA on December 8, 2010.  Question 1 of the SOFA lists income from the INFR rodeo gross income and membership income for the years 2008, 2009 and 2010 in the amounts of $283,789.00, $73,048.00, and $413,330.59, respectively.  At question 2 Debtor lists income from contributions for 2008, 2009, and 2010 in the amounts of $381,366.00, $562,394.00, and $198,969.85, respectively.

On cross examination about that decline in contributions, Hoyt testified that contributions for 2010 may have been received in 2009.  Ex. C to INFR's first Disclosure Statement (Dkt. 62)

8

includes INFR's profit & loss ("P&L") for the year 2010. The 2010 P&L shows $270,363.85 in sponsorship money received in 2010, broken down between $12,894.85 in 2009 sponsorships and $257,469 in 2010 sponsorships. Hoyt admitted that the $257,469 on Ex. C is not the same amount as the $198,969.85 in 2010 contributions stated at No. 2 on the SOFA, and she agreed to provide more information. Under redirect examination Hoyt explained that the 2010 contributions on the SOFA in the amount of $198,969.85 were as of December 2, 2010, when the SOFA was filed, while the $257,469,00 in 2010 sponsorships stated on Ex. C to the Disclosure Statement were through the end of 2010, reflecting the entire year, including sponsorship money received in December 2010.

Ex. D to Dkt. 62 is the P&L for 2008 and 2009. That shows 2008 sponsorships received in the amount of $381,366.25, and 2009 sponsorships in the amount of $300,350, both of which Hoyt testified were while INFR held its finals rodeo in Las Vegas. Ex. D shows a positive net income for INFR for the year 2008 in the amount of $1,796.75, and $29,052.44 for the year 2009. Ex. C to Dkt. 62, by contrast, shows a negative net income for the year 2010 in the amount of -$12,379.01.

This case was transferred to this Court from Nevada by order of the Nevada bankruptcy court on January 25, 2011. Apache Gold filed the only Proof of Claim in this case, on May 19, 2011. Claim No. 1 asserts an unsecured nonpriority claim in the amount of $340,094.66 based on the judgment, comprised of the $275,000 judgment amount, plus prejudgment interest and attorney fees. Hoyt testified that the Debtor has no dispute with Apache Gold's $275,000 claims.

Debtor filed its Disclosure Statement and Chapter 11 Plan of Reorganization ("Plan")

9

(Dkt. 61) on March 3, 2011[3]. The Disclosure Statement provides income and expenses for the 2010 finals rodeo, but not for other years. Hoyt testified that she had the data from prior years[4]. The Plan provides at page 4, Article II "Classification of Claims" for two classes of claims: Class One which is the allowed unsecured claim of Apache Gold, and Class Two comprised of allowed unsecured claims of less than $10,000.

Article IV provides at 4.02 that Apache Gold shall be paid an aggregate of 50% of its allowed claim of $275,000, or $137,500, payable over 7 annual installments of $19,643 starting December 1, 2012, and for six more years thereafter. The Plan further provides that Apache Gold's judgment will be extinguished on the effective date of the Plan and be void, discharge and unenforceable. Class Two will be paid the full amounts of their allowed claims without interest in eight annual installments, or alternatively 50% of such claims in three annual installments, beginning December 1, 2011. Hoyt estimated the plan payments would total approximately $25,000 per year, which leaves the Debtor with a cushion based upon its historical financial performance.

Ex. 12 is INFR's projected budget for the 2011 INFR National Finals rodeo. Ex. 12 projects revenues in the total amount of $642,500 from sponsorships ($350,000), ticket sales ($200,000) and other revenue sources.. The projected expenses total $582,240.66. Hoyt testified that the expenses came from the actual costs she recorded from the 2010 finals, and that the "Cut back" column next to expenses on Ex. 12 shows where she can further cut expenses by a total of

---

[3]Subsequent Plans were filed after the April 15, 2011, hearing and are not part of the record for purposes of this decision.

[4]The Court directed the Debtor to amend the Disclosure Statement to provide INFR historical income and expenses, and Johnson agreed.

$45,600.00.

The cut back in expenses on Ex. 12 include: $14,000 in savings by using volunteers rather than hired workers; $5,600 by eliminating free food and beverages to sponsors; $11,500 in attorney fees which she does not believe she will incur in 2011 because those fees were to retain an attorney to appear in the tribal court and Nevada state court; and $6,500 savings in headquarters office staff by using scholarship recipients instead of part-time help.

Hoyt testified that ticket sales and revenues for INFR have increased every year for the 3 years since it moved the national finals rodeo to Las Vegas, and are higher than they ever were when the finals was held at the Apache Gold resort. Debtor projects that the INFR finals total revenue could increase to $642,500 by the year 2012, from the 2010 revenue shown on Ex. 9. When asked on cross examination about this projected revenue increase, Hoyt testified that the increased revenue will come from increased sponsorships and ticket revenues. She testified that she factored in the current high price of gasoline in her projections.

Under questioning by the Court Hoyt testified that INFR is under contract with South Point Casino in Las Vegas for 2011 and later years, that INFR is receiving sponsorships beyond 2011, and that the regions have started organizing their regional rodeos.

## DISCUSSION

Apache Gold's motion to dismiss (Dkt. 24) is based upon § 1112(b), which specifically lists causes for relief. "Bad faith" is not specifically listed as a cause under § 1112(b)(4), but nonetheless lack of good faith has long been recognized as an appropriate ground for dismissal or conversion of a chapter 11 case. *In re Detienne Associates Ltd. Partnership*, 342 B.R. 318, 324 (Bankr. R. Mont. 2006) (citing cases); *In re Zaruba*, 2007 WL 4589746, *2 (Bankr. D. Alaska

2007), citing 7 COLLIER ON BANKRUPTCY ¶ 1112.01[2][c] (15th ed. rev. 2007); *see also In re Mosser*, 2009 WL 1346152, *5 (Bankr. D. Mont. 2009).

The most recent Ninth Circuit case is *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994), where the circuit court affirmed dismissal of a chapter 11 case as a bad faith filing. *See also In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir.1986); *In re Stolrow's, Inc.*, 84 B.R. 167, 170 (9th Cir. BAP 1988). The Ninth Circuit noted that the good faith determination was dependent upon "an amalgam of factors and not upon a specific fact[,]" and that the "test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *Id.,* citing *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986). This Court cited *Marsch*, *Arnold*, and *Stolrow's* in *Detienne*, 342 B.R. at 324, where the Court noted that objective factors as well as subjective intent can support bad faith dismissal. 342 B.R. at 324.

Apache Gold argues that bad faith is shown by the Debtor's filing to thwart Apache Gold's efforts to enforce its judgment, "without hope or ability to effectively reorganize." Apache Gold argues that only two unsecured creditors are not insiders, and the others are employees or officers of INFR. It further argues that the 2010 INFR finals broke even only because South Point forgave Debtor's debt, and it cannot fund ongoing operations or effect an effective reorganization. In its supplement to its motion to dismiss Apache Gold argues that the case should be dismissed based upon Hoyt's perjury and Debtor's fraudulent Schedules which she failed to disclose the $250,000 in cashier's checks.

Debtor opposes the motion to dismiss. Debtor admits filing the petition to protect the sponsorship and prize money, which it held in trust, in order for the 2010 national finals to take

place and preserve the revenues. Debtor contends that it can become profitable because of the improved facilities in Las Vegas and the financial support of South Point, the sponsors, and the members.

Debtor response to the allegations of perjury and fraud argues that the cashier's check was from sponsors and member fees and were held in trust for the event, that they were not Debtor's funds, and that Debtor amended its Schedule B. Debtor argues that Apache Gold has no security interest in or claim against the funds held in trust. Debtor argues that it should be allowed to proceed with confirmation.

In *Mosser* and *Detienne* this Court listed the following factors which, while not exclusive of other evidence of bad faith, are usually present in cases not filed in good faith and may be considered in a motion to dismiss for cause:

(1) The debtor has only one asset.
(2) The secured creditors' lien encumbers that asset.
(3) There are generally no employees except for the principals.
(4) There is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments.
(5) There are few, if any, unsecured creditors whose claims are relatively small.
(6) There are allegations of wrongdoing by the debtor or its principals.
(7) The debtor is afflicted with the "new debtor syndrome" in which a one-asset equity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors.
(8) Bankruptcy offers the only possibility of forestalling loss of the property.

*Detienne*, 342 B.R. at 324; *Stolrow's*, 84 B.R. at 171.

The case in *Marsch* was dismissed because the debtor, who was not in a business venture, had the financial means to pay a judgment but the debtor filed chapter 11 to prevent the entry of a state court judgment and avoid posting an appeal bond. *Id.* The Ninth Circuit affirmed the bankruptcy court's dismissal and its holding that the debtor's petition was filed in bad faith. *Id.*

at 829. The Debtor in the instant case is a nonprofit, and the evidence is factually distinguishable from *Marsch*. INFR did not file the petition to prevent entry of a judgment, and did not appeal the judgment so therefore did not file this Chapter 11 case to avoid posting an appeal bond. Furthermore, the evidence shows that the Debtor does not have the financial means to pay the judgment of Apache Gold. INFR's reorganization depends on contributions from sponsors, membership fees and entry fees from members in order to reorganize.

Turning to the *Stolrow's* factors, the evidence shows that this Debtor has more than one asset, though admittedly its assets are not worth very much. No secured creditors exist, and thus no lien encumbers Debtor's assets. Debtor has more employees than just Hoyt, although not many and Debtor intends to replace employees with volunteers. Cash flow to sustain a Plan depends on membership fees, entry fees, and sponsorships. Ex. 7 lists six unsecured creditors in addition to Apache Gold. The smallest listed claim is for $776.60.

Apache Gold alleges wrongdoing by the Debtor and Hoyt in her testimony and the Schedules. However, the Debtor amended its Schedules. Amendment of schedules by the debtor is liberally allowed pursuant to F.R.B.P. 1009(a) as a matter of course at any time before the case is closed. *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. 2000), (citing *Martinson v. Michael*, 17 Mont. B.R. 192, 198, 163 F.3d 526, 529 (9th Cir. 1998)).

With respect to the dispute whether the sponsor funds and membership fees are held in trust, a proceeding to determine the validity of an interest in property requires an adversary proceeding under F.R.B.P. 7001(2). Since Apache Gold is the moving party it has the burden of proof, and Apache Gold fails to satisfy its burden of proof on the issue of whether the sponsorship funds or entry fees are property of the estate when it failed to follow proper

14

procedure under Rule 7001(2) for a determination of whether those funds are property of the estate, or trust property.

No evidence exists in the record under factor 7 that a one-asset equity has been created on the eve of foreclosure. The final factor, whether bankruptcy offers the only possibility of forestalling the loss of the property, also does not apply since Apache Gold failed to follow the proper procedure under Rule 7001(2) to determine that the cashier's check funds were property of the estate.

This Court concludes, after consideration of the *Stolrow's* factors, that Apache Gold failed to satisfy its burden of proof to show that the Debtor filed the Chapter 11 petition in bad faith under § 1112(b). The Court finds that the Debtor is not attempting to unreasonably deter and harass creditors, but rather is attempting to effect a speedy, efficient reorganization on a feasible basis. *Marsch*, 36 F.3d at 828.

Consistent with the foregoing findings and conclusions, the Court entered a separate written Order on April 15, 2011 (Dkt. 89), denying Apache Gold's motion to dismiss.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana